IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 18-cr-664 |
| v. | ) | |
| | ) | Honorable Virginia Kendall |
| MICHAEL THOMPKINS | ) | |
| | ) | |

**MOTION TO SUPPRESS EVIDENCE**

MICHAEL THOMPKINS, by the Federal Defender Program and its attorney, AMANDA G. PENABAD, respectfully submits this motion to suppress and asks that the Court enter an order precluding the government from introducing into evidence a .40 caliber pistol seized from Mr. Thompkins' vehicle, and further prohibit the admission of any statements made by Mr. Thompkins following his seizure and arrest on April 29, 2018. In support of this motion, Mr. Thompkins states the following:

**INTRODUCTION**

A Chicago police officer seized Mr. Thompkins without a warrant and for an unreasonable period of time after stopping the car he was driving for an alleged minor traffic violation. This law enforcement action, without court authorization or lawful justification, violated the Fourth Amendment. The government cannot carry its burden of justifying the officers' conduct. All fruits of the officers' unlawful actions must be suppressed.

1

# STATEMENT OF FACTS[1]

On April 29, 2018, at approximately 9:13pm, Chicago police officers Roger Farias and Samuel Broderick were on patrol in a marked squad car, travelling northbound on the 6200 block of South May Street. *See* Police Report, Exh 1 at 3 (18CR664_000048); *see also* Farias Dashcam Video, attached as Exh 2. South May Street between W 59th Street and W 74th Street is a one-way street that runs southbound. The dash camera video for Officers Farias' and Broderick's vehicle shows that Mr. Thompkins was driving the correct (southbound) way down May Street between 61st and 62nd streets, towards the officers' car. Exh. 2 at 0:05. When the police vehicle approached intersection of 62nd and May and continued to drive the wrong way northbound, Mr. Thompkins' car pulled over to the west side of the street to allow the officers to pass. *See* Exh. 2 at 0:12. The officers passed Mr. Thompkins' vehicle and immediately executed a U-turn to position their vehicle behind Mr. Thompkins and pull him over. *See* Exh 1 at 3; Exh 2 at 0:45. According to the police report, the officers did so because Mr. Thompkins' headlights were not dimmed when he pulled over to the side of the street, which the officers regarded as a violation of Chicago Municipal Code (MCC) section 9-76-090(C). *See* Exhibit 1 at 3.

---

[1] For the purpose of this motion Mr. Thompkins is relying on police reports to provide background information.

The officers further claimed that they saw Mr. Thompkins merge from the side of the road back into traffic without using his turn signal, which the officers regarded as a violation of MCC 9-40-200(C). *See* Exhibit 1 at 3. The dash camera video does not capture footage of Mr. Thompkins merging back into traffic, as the officers' car faced north at the time.

Once the officers turned on their flashing lights and commenced the traffic stop, Officer Farias left the patrol car and approached Mr. Thompkins' vehicle. At this point, Mr. Thompkins had his window rolled down and both hands visible, sticking out of the drivers' side window. Officer Farias asked for Mr. Thompkins' license and insurance paperwork, which Mr. Thompkins retrieved from the visor above the steering wheel. Officer Farias then went back to his vehicle and ran Mr. Thompkins' name and registration. The check revealed no outstanding warrants, investigative alerts, or orders of protection concerning Mr. Thompkins. Officer Farias then queried the in–car system to check Mr. Thompkins for prior criminal convictions. The system indicated that Mr. Thompkins had previous convictions for firearm possession. *See* Farias Body Camera, attached as Exh 3 at 4:18.

Upon learning that Mr. Thompkins had prior convictions, Officer Farias walked back to Mr. Thompkins' vehicle and knocked on the driver's side window. Officer Farias told Mr. Thompkins that he had "looked at his rap sheet and [he] had a lot of [gun possession charges] on there." *See* Farias Body

3

Camera, attached as Exh 3 at 4:45. Mr. Thompkins indicated that those convictions were old. In response, Officer Farias said, "Hey man, this is what's going to happen. I'm not going to give you tickets or anything like that. I just want to make sure you don't have any guns in the car." *See* Farias Body Camera, attached as Exh 3 at 5:24. Mr. Thompkins declined to consent to a search of his car. Officer Farias tried again, stating: "I understand that. But, based on your history of weapon usage, I need you to step out." *See* Farias Body Camera, attached as Exh 3 at 5:42. Mr. Thompkins again declined to step out of the car, and asked that a supervisor be called.

The officers call for backup and additional police vehicles and officers arrive on the scene. Exh 2 at 9:00. Approximately seven minutes after Mr. Thompkins' refusal to allow the car to be searched, Sergeant Brown arrived on the scene and ordered Mr. Thompkins out of the car. Mr. Thompkins refused to get out of the car, and Sergeant Brown ordered the officers present to take Mr. Thompkins into custody for resisting a peace officer. When the officers pulled Mr. Thompkins out of his car, an officer observed a black handgun on the driver's seat.

**ARGUMENT**

Mr. Thompkins' rights were violated in two ways. First, there was no lawful basis for the initial stop and detention of Mr. Thompkins. Second, there

was no lawful basis for extending the detention once the officers completed the traffic stop.

The Fourth Amendment prohibition against illegal searches and seizures exists to protect all citizens against unwarranted intrusions by the government and overzealous agents of the government. S*ee Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The primary judicial deterrent available to enforce this goal is the exclusionary rule. *See United Sates v. Leon*, 468 U.S. 897, 906 (1984). By prohibiting the use of the evidence obtained through unconstitutional means, the judicial branch deters overzealous agents of the government from intruding into the lives of private citizens. When a Court determines that evidence is obtained unlawfully, that evidence should be suppressed. *Leon*, 468 U.S. at 906.

> **I. The government cannot carry its burden of establishing that the warrantless seizure of Mr. Thompkins did not violate the Fourth Amendment, because there was no reasonable suspicion for the traffic stop.**

Mr. Thompkins was seized when Officer Farias stopped the car he was driving. A person is seized when the police intentionally apply physical force or a show of authority to restrain that person's freedom of movement. *Brendlin v. California*, 551 U.S. 249, 254 (2007). Thus, when a police officer conducts a traffic stop, the officer "seizes everyone in the vehicle." *Id*. at 255. This

remains true even if the stop is conducted only "for a brief period and for a limited purpose." *Whren v. United States*, 517 U.S. 806, 810 (1996).

Whether probable cause for a stop exists depends on what an objectively reasonable officer in the shoes of the seizing officer would have perceived at the time of the seizure. *Id.* at 813. When the government obtains evidence as the result of a warrantless seizure, the government bears the burden of establishing by a preponderance of the evidence that an exception to the warrant requirement applied. *U.S. v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000).

In this case, Officers Farias and Broderick claim to have observed Mr. Thompkins parked with lights on in violation of the Chicago Municipal Code and further claim that this observation served as the lawful basis for stopping Mr. Thompkins. The testimony and evidence presented at the suppression hearing will show that Mr. Thompkins was not, in fact, parked at the time the officers observed him. Rather, Mr. Thompkins had simply pulled over to allow the marked squad car, which was travelling in the wrong direction of traffic on a narrow one-way street, to pass. In other words, Mr. Thompkins pulled over to get out of the way and allow a police car to pass. Mr. Thompkins was not parked when the officers proceeded against the flow of traffic on the 6100 block of South May Street.

In so proceeding, the officers created the emergency that required Mr. Thompkins to pull out of traffic, and subsequently initiated a traffic stop when he reacted safely and lawfully. As such, the initial traffic stop was without a lawful basis. The evidence seized as a result of this initial stop is the fruit of the poisonous tree and should be suppressed. *U.S. v. Wilbourn*, 799 F.3d 900, 910 (7th Cir. 2015).

**II. Because the traffic stop was unreasonably prolonged, the government cannot carry its burden of establishing that the warrantless seizure of Mr. Thompkins did not violate the Fourth Amendment.**

Even if the Court were to find that the initial traffic stop was lawful, the seizure here nonetheless violated the Fourth Amendment because it was unreasonably prolonged. "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015). Particularly, "[a] seizure justified only by a police-observed traffic violation . . . becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.* at 1612. "When the reasonable suspicion justifying the stop evaporates, the stop must end." *United States v. Lopez,* 907 F.3d 472, 478 (7th Cir. 2018); *see also United States v. Rodriguez-Escalera*, 884 F.3d 661, 668 (7th Cir. 2018). In the

7

present case, the traffic stop was prolonged beyond the time required for issuing the ticket, rendering the stop unconstitutional.

Officer Farias's questions about Mr. Thompkins' criminal history and his request for Mr. Thompkins to step out of the car so it could be searched did not address the traffic violation that allegedly warranted the stop. Officer Farias asked Mr. Thompkins questions and told him to step out of the car only after he had already completed all tasks reasonably related to addressing the alleged violation. In the officer's own words, he had already concluded that he was "not going to give [Mr. Thompkins] tickets or anything like that." *See* Farias Body Camera, attached as Exh 3 at 5:24. During a traffic stop, an officer's only tasks — aside from determining whether to issue a ticket — are those related to "ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez*, 135 S. Ct. at 1615. These include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. Officer Farias's first actions during the stop were to ask Mr. Thompkins for identification and insurance. He then returned to his vehicle and verified that Mr. Thompkins had no outstanding warrants or other alerts.

Having completed all these tasks, Officer Farias then unconstitutionally delayed the traffic stop by subsequently querying the database to learn Mr. Thompkins' criminal history and questioning Mr. Thompkins about that

8

criminal history. The Seventh Circuit has repeatedly held that "[q]uestioning that prolongs the detention, yet cannot be justified by the purpose of such an investigatory stop, is unreasonable under the fourth amendment." *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002) (*en banc*), citing *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Mr. Thompkins' criminal history has nothing to do with alleged failure to use a turn signal. Officer Farias' actions therefore unconstitutionally prolonged the traffic stop.

Officer Farias further prolonged the stop when he asked Mr. Thompkins to exit the car so it could be searched. Indeed, it is clear from the video that Officer Farias has fully concluded the traffic stop because he states that he is not going to give Mr. Thompkins any tickets "or anything like that." *See* Farias Body Camera, attached as Exh 3 at 5:24. Despite the fact that the traffic stop is over, Officer Farias unlawfully orders Mr. Thompkins to exit the vehicle so that it may be searched. At the time Officer Farias makes the demand that Mr. Thompkins allow the car to be searched, Officer Farias had no basis to conclude that any criminal activity was ongoing. The purported traffic violation in this case provided no legal justification upon which to base a vehicle search because all the evidence necessary to prosecute that offense had been obtained. *Knowles v. Iowa*, 525 U.S. 113, 118 (1998).

9

Mr. Thompkins refused to consent to an unlawful search of his car and asked the officers to call for a supervisor. As a result, the traffic stop was further extended. In sum, the traffic stop lasted 18 minutes; far longer than the 7 to 8 minute delay of which the Supreme Court disapproved in *Rodriguez*. 135 S. Ct. at 1613. Officer Farias' unreasonable prolonging of the stop under these circumstances violated the Fourth Amendment.

## CONCLUSION

For the reasons stated above, Mr. Thompkins respectfully moves the Court to suppress all fruits of the warrantless seizure of his person.

                                                             Respectfully submitted,

                                                             FEDERAL DEFENDER PROGRAM
                                                             John F. Murphy
                                                             Executive Director

                    By:    s/ *Amanda G. Penabad*
                                                           Amanda G. Penabad

AMANDA G. PENABAD
FEDERAL DEFENDER PROGRAM
55 E. Monroe Street, Suite 2800
Chicago, Illinois 60603
(312) 621-8340

# CERTIFICATE OF SERVICE

The undersigned, <u>Amanda G. Penabad</u>, an attorney with the Federal Defender Program hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

## **MOTION TO SUPPRESS EVIDENCE**

was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent by first-class mail/hand delivery on <u>January 11, 2019</u>, to counsel/parties that are non-ECF filers.

                                         FEDERAL DEFENDER PROGRAM
                                         John F. Murphy,
                                         Executive Director

                                         By: *s/ Amanda G. Penabad*
                                                 Amanda G. Penabad
                                                 Attorney for Defendant

Amanda G. Penabad
Federal Defender Program
55 East Monroe Street, Suite 2800
Chicago, Illinois 60603
(312) 621-8340

# Exhibit 1
# Police Report

CHICAGO POLICE DEPARTMENT
**ARREST REPORT**
3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11. 420C(REV. 6/30)

FINAL APPROVAL

CB #: 19636802
IR #: 1703558
YD #:
RD #: JB243109
EVENT #: 1811914396

## ARREST REPORTING

### OFFENDER

**Name:** THOMPKINS, Michael D JR
**Res:** 1922 W Garfield Blvd
Chicago, IL 60609
Unknown
**Beat:** 932
**DOB:** 01 October 1991
**AGE:** 26 years
**POB:** Illinois
**DLN:** T51254491280
**ARMED WITH** Handgun

Male
Black
6' 01"
200 lbs
Brown Eyes
Black Hair
Short Hair Style
Medium Brown Complexion

### INCIDENT

**Arrest Date:** 29 April 2018 21:24
**Location:** 6146 S May St
Chicago, IL 60621
304 - Street
**Holding Facility:** District 007 Lockup
**Resisted Arrest?** No

**TRR Completed?** No
**Beat:** 712

**Total No Arrested:** 1

**Dependent Children?** No

**Co-Arrests**     **Assoc Cases**

**DCFS Ward ?** No

### CHARGES

| # | | | Victim |
|---|---|---|---|
| 1 | Offense As Cited | 720 ILCS 5.0/31-1-A<br>RESISTING/OBSTRUCT/PC OFF/CORR EMP/FRFTR<br>Class A - Type M | State Of Illinois, P.O. Farias |
| 2 | Offense As Cited | 9-76-090<br>PARKED VEHICLES-LIGHTING REGLT<br>Class L - | State Of Illinois, P.O. Farias |
| 3 | Offense As Cited | 9-40-250(B)<br>OBSTRUCTION DRIVERS VIEW<br>Class L - | State Of Illinois, P.O. Farias |
| 4 | Offense As Cited | 9-40-200(C)<br>OPERATOR SIGNAL CHANGE LANE<br>Class L - | State Of Illinois, P.O. Farias |
| 5 | Offense As Cited | 720 ILCS 5.0/24-1.7-A<br>ARMED HABITUAL CRIMINAL<br>Class X - Type F | State Of Illinois, P.O. Farias |

### FELONY REVIEW

**Felony Review :** Approved    29 APR 2018 23:23    Galaghers,    State's Attorneys's Office

## RECOVERED NARCOTICS

NO NARCOTICS RECOVERED

## WARRANT

NO WARRANT IDENTIFIED

## VICTIM AND COMPLAINANT

| | | |
|---|---|---|
| Name: STATE OF ILLINOIS, P.O. Farias<br>Res: 1438 W 63rd St     Beat:713<br>Chicago, IL 60636<br>312-747-8220 | DOB:<br>Age:<br>Comments: | Injured? No    Deceased? No<br>Hospitalized? No<br>Treated and Released? No |

NON-OFFENDER(S)

## ARRESTEE VEHICLE

Vehicle:               VEHICLE IMPOUNDED:
2006   Automobile - Buick - Unknown - Hardtop, 4-Door        VIN#:                    Lic#: ZU79749
Color: Red (Top) / Red (Bottom)                                                        Inv#:
Pound#:
Disposition: Impounded

## Confiscated Properties :

All confiscated properties are recorded in the e-Track System. This system can be queried by the inventory number to retrieve all official court documents related to evidence and/or recovered properties.

PROPERTIES INFORMATION FOR    THOMPKINS, Michael Jr,    NOT AVAILABLE IN THE AUTOMATED ARREST SYSTEM.

## ARREST REPORTING

**INCIDENT NARRATIVE**

(The facts for probable cause to arrest AND to substantiate the charges include, but are not limited to, the following)

EVENT #14396. CAPTURED ON BWC. IN SUMMARY, A/OS WHILE ON PATROL IN UNIFORM AND A MARKED DEPARTMENT VEHICLE OBSERVED THE ABOVE VEHICLE PARKED AT NIGHTTIME UPON A LIGHTED STREET IN A RESIDENTIAL DISTRICT WITHOUT ITS HEAD LAMPS DEPRESSED OR DIMMED IN VIOLATION OF MCC 9-76-090(C). A/OS WHILE MANEUVERING BACK TO EFFECT A TRAFFIC STOP FOR SAME OBSERVED THE VEHICLE MERGE INTO TRAFFIC FROM A PARALLEL-PARKED POSITION WITHOUT USING ITS TURN SIGNAL IN VIOLATION OF MCC 9-40-200(C). A/OS FURTHER OBSERVED THE VEHICLE AS IT TRAVELED S/B UPON S MAY ST WITH A LARGE SWINGING OBJECT HANGING FROM THE REAR-VIEW MIRROR AND OBSTRUCTING THE DRIVER'S VIEW IN VIOLATION OF MCC 9-40-250(B). AS SUCH, A/OS EFFECTED A TRAFFIC STOP AT THE ABOVE LOCATION. UPON ARRIVAL AT THE VEHICLE, A/OS MET WITH MICHAEL D. THOMPKINS JR. (ARRESTEE) IN THE DRIVER'S SEAT OF SAME. A/OS WHILE CONDUCTING SAME STOP OBSERVED A LARGE DARK WOOD BATON INVENTORIED UNDER INV#/14160190 STUCK NEAR THE CENTER CONSOLE IN IMMEDIATE REACH OF ARRESTEE. NAME QUERY VIA CPD CLEAR REVEALED AT LEAST FOUR (4) PRIOR CONVICTIONS FOR FIREARM-RELATED OFFENSES: "UUW - WEAPON - PUBLIC STREET" ON 06JUL2016 UNDER CASE#/16150270701; "FELON POSSESS WEAPON/2ND+" ON 25MAY2012 UNDER CASE#/12CR0678101; "AGG UNLWFL USE WEAPON/VEH/2ND" ON 25MAY2012 UNDER CASE#/11CR0888901; "AGG UNLAWFUL USE OF WEAPON/VEH" ON 07DEC2009 UNDER CASE#/09CR2069901. A/OS REQUESTED MULTIPLE TIMES THAT ARRESTEE STEP OUT OF THE VEHICLE FOR THE REMAINDER OF THE TRAFFIC STOP WHICH ARRESTEE CONTINUALLY REFUSED IN VIOLATION OF 720 ILCS 5/31-1(A) -- OBSTRUCT/RESIST PEACE OFFICER; AS SUCH, A/OS REQUESTED A SUPERVISOR TO THE SCENE. BT 720 A/O SGT. BROWN #1836 PROVIDED MULTIPLE ADDITIONAL LAWFUL ORDERS TO ARRESTEE REQUIRING HIM TO STEP OUT OF THE VEHICLE WHICH ARRESTEE CONTINUALLY REFUSED IN FURTHER VIOLATION OF 720 ILCS 5/31-1(A). A/OS WHILE ATTEMPTING TO PLACE SUBJECT IN CUSTODY FOR VIOLATION OF 720 ILCS 5/31-1(A) OBSERVED A BLACK HANDGUN (SPRINGFIELD ARMORY; XDM; MG293623; .40 CAL; SEMI-AUTOMATIC PISTOL; 3.8"; BLACK; CROATIA; SPRINGFIELD INC.) INVENTORIED UNDER INV#/14160170 BETWEEN ARRESTEE'S BUTTOCKS AND THE DRIVER'S SEAT. ARRESTEE PLACED INTO CUSTODY, SEARCHED, AND TRANSPORTED BY BT 712 TO 007TH DISTRICT STATION FOR FURTHER PROCESSING. ARRESTEE MIRANDIZED ON BWC AT 2140 HRS BY BT 720 A/O SGT. BROWN #1836 IN PRESENCE AND ON BWC OF A/O HASENFANG #15085 A/O FARIAS #9942. TRAFFIC CITATIONS ISSUED: TN-283-212 FOR MCC 9-76-090(C); TN-283-213 FOR MCC 9-40-250(B); TN-283-214 FOR MCC 9-40-200(C). NAME INQUIRY CLEAR: NO WARRANTS, INVESTIGATIVE ALERTS, OR ORDERS OF PROTECTION. ARRESTEE IS A DOCUMENTED MEMBER OF THE GANGSTER DISCIPLE STREET GANG. ARRESTEE HAS $88.00 USC ON HIS PERSON AT TIME OF ARREST. PRISONER PERSONAL PROPERTY INVENTORIED UNDER INV#/14160176.

**COURT INFO**

Desired Court Date: 07 May 2018
Branch: 48-2   155 W 51ST ST - Room
Court Sgt Handle? No
Initial Court Date: 30 April 2018
Branch: CBC-1   2600 S CALIFORNIA - Room 100
Docket #:

**BOND INFO**

BOND INFORMATION NOT AVAILABLE

**REPORTING PERSONNEL**

**ATTESTING OFFICER:**

I hereby declare and affirm, under penalty of perjury, that the facts stated herein are accurate to the best of my knowledge, information and/or belief.

Attesting Officer:   #9942   FARIAS, R  (PC0AC58)   30 APR 2018 00:55

**ARRESTING OFFICER(S):**

| | | | Beat |
|---|---|---|---|
| 1st Arresting Officer: | #9942 | FARIAS, R (PC0AC58) | 0733 |
| 2nd Arresting Officer: | #11940 | BRODERICK, S G (PC0BK20) | 0733 |

**APPROVING SUPERVISOR:**

Approval of Probable Cause:   #406   RASHAN, E J (PC0V195)   30 APR 2018 01:33

# Chicago Police Department - ARREST Report

CB #: 19636802
THOMPKINS, Michael JR

## ARREST PROCESSING REPORT

Holding Facility: District 007 Lockup
Received in Lockup: 30 April 2018 01:50
Prints Taken: 30 April 2018 02:15
Palmprints Taken: Yes
Photograph Taken: 30 April 2018 02:14
Released from Lockup: 30 April 2018 09:51

Time Last Fed: 30 April 2018 02:30
Time Called:   Phone#: 3123917625
Cell #: 12
Transport Details : 2PO   0712   29-APR-2018 21:36

### VISUAL CHECK OF ARRESTEE

| | |
|---|---|
| Is there obvious pain or injury? | No |
| Is there obvious signs of infection? | No |
| Under the influence of alcohol/drugs? | No |
| Signs of alcohol/drug withdrawal? | No |
| Appears to be despondent? | No |
| Appears to be irrational? | No |
| Carrying medication? | No |

### ARRESTEE QUESTIONNARIE

| | |
|---|---|
| (if female)are you pregnant? | |
| First time ever been arrested? | No |
| Attempted suicide/serious harm? | No |
| Transgender/intersex/gender non-conforming? | No |
| Deaf/hard of hearing-request interpreter for court? | No |
| Interpreter needed? (indicate language) | No |
| Serious medical problems? | No |
| Serious mental problems? | No |

### ARRESTEE PRESCRIPTION MEDICATION INFORMATION:

| Question | Response | Medical Condition | Next Medication Due |
|---|---|---|---|
| Presently Taking Prescribed Medication? | No | | |

### RETURN TO HOLDING FACILITY COMMENTS:

### QUESTIONNAIRE REMARKS:

### LOCKUP KEEPER COMMENTS:

### EMERGENCY CONTACT

Name : JONES, Angela

Res: 1922 W Garfield Blvd, #1   Beat:0932
Chicago, IL 60609
773-750-2699

## INTERVIEW LOG

NO INTERVIEWS LOGGED

ARREST PROCESSING REPORT

## VISITOR LOG

NO VISITORS LOGGED

## MOVEMENT LOG

MOVEMENT LOG INFORMATION NOT AVAILABLE

## WC COMMENTS

Watch Commander Comments:

REL w/o CHARGING: DOES NOT APPLY TO THIS ARREST

## PROCESSING PERSONNEL

**ARRESTEE PROCESSING PERSONNEL:**

| | | | Beat |
|---|---|---|---|
| Searched By: | | PRICE, D J (PC0AG14) | |
| Lockup Keeper: | #8955 | ARMSTEAD, T B (PC0M142) | |
| Assisting Arresting Officer: | #14997 | CIMAGLIA, B (PC0BG11) | 0725 |
| Assisting Arresting Officer: | #15085 | HASENFANG, K H (PC0BH80) | 0712 |
| Assisting Arresting Officer: | #19854 | BONGIOVANNI, K M (PC0Z667) | 0725 |
| Assisting Arresting Officer: | #5689 | KELLEY, R R (PC0Z343) | 0712 |
| Fingerprinted By: | | PRICE, D J (PC0AG14) | |

**APPROVAL PERSONNEL:**

| | | | | Beat |
|---|---|---|---|---|
| Final Approval of Charges: | #1559 | MURPHY, M E(PC0X108) | 30 APR 2018 02:49 | |

# Exhibits 2 & 3

Farias Dashcam Video

(Hand Delivery of one DVD containing Exhibits 2 & 3 to Court and Parties)