UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL THOMPKINS | No. 18 CR 664<br><br>Judge Virginia M. Kendall |

**GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS**

The UNITED STATES OF AMERICA, through its attorney, JOHN R. LAUSCH, JR, United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant Michael Thompkins' motion to suppress evidence (Dkt. No. 24).

As discussed below, defendant's motion should be denied because: (1) police officers had reasonable suspicion to believe defendant had violated at least three laws and, therefore, lawfully stopped defendant's vehicle; and (2) police officers lawfully ordered defendant out of his vehicle during the traffic stop without unconstitutionally prolonging the stop.

**FACTUAL BACKGROUND**

As reflected in the arrest report, Chicago Police Officers on patrol in a marked police car observed a vehicle – later determined to be driven by defendant – violate three Chicago Municipal Codes while in the area of 6146 South May Street in Chicago, Illinois. (Def. Br. Ex. 1 at 3.) In the evening on April 29, 2018, police officers driving northbound on May Street in Chicago drove past defendant's vehicle, which was facing south and parked on the side of May Street. (Def. Br. Ex. 2 at 00:28-00:36.)

1

The lights on defendant's vehicle were on at the time officers passed his vehicle. (*Id.*) After passing defendant's vehicle, police officers observed defendant pull out of the parking space and merge into traffic without using a turn signal. (Def. Br. Ex. 1 at 3.) Police officers also observed a large object hanging from the rear-view mirror of defendant's vehicle. (*Id.*) Having observed these three traffic violations,[1] police officers initiated a traffic stop of defendant's vehicle. (*Id.*; *see also* Def. Br. Ex. 2.)

After initiating the traffic stop, Officer Farias approached the driver side of defendant's vehicle and obtained defendant's driver's license. (Def. Br. Ex. 3 at 00:40-01:00.) Officer Farias returned to his patrol vehicle where he queried defendant's name in a law enforcement database, revealing defendant's numerous firearms related convictions. (*Id.* at 04:16-4:35; Def. Br. Ex. 1 at 3.) Officer Farias returned to defendant's vehicle, at which time he told defendant he had been "looking at [defendant's] rap sheet and [defendant had] a lot of UUW [unlawful use of a weapon] on there." (Def. Br. Ex. 3 at 04:44-04:50.) Defendant responded that his prior gun convictions were old and stated, "I don't be paying attention to that shit, man, I mean, as long as I got my license and insurance straight, I don't f**k around with none of that sh*t, man." (*Id.* at 04:49-05:02.) The police officers subsequently questioned

---

[1] Specifically, as reflected in the arrest report, the police officers who pulled defendant over cited the following Chicago Municipal Codes ("MCC") for the traffic stop: (1) MCC § 9-76-090(c), requiring "[a]ny lighted head lamps upon a parked vehicle shall be depressed or dimmed"; (2) MCC § 9-40-200(c), requiring "[a] turn signal shall be given to indicate an intention to change lanes or start from a parallel parked position"; and (3) MCC § 9-40-250(b), requiring "[n]o person shall drive any motor vehicle upon a roadway with any object so placed in or upon the vehicle as to obstruct the driver's clear view through the windshield, except required or permitted equipment of the vehicle." Defendant was issued traffic citations for each of these violations. (Def. Br. Ex. 1 at 1.)

defendant about a police baton near the center console of his vehicle and within his reach. (*Id.* at 05:06-05:21; Def. Br. Ex. 1 at 3.)

Immediately thereafter, Officer Farias told defendant that he was "not going to give [defendant] tickets or anything like that," but "want[ed] to make sure [defendant didn't] have any guns in the car." (Def. Br. Ex. 3 at 05:21-05:29.) Defendant responded, "what I want you to search the car for man? There ain't nothing in here, man." (*Id.* at 05:29-05:41.) Officer Farias told defendant that he, "underst[ood] that, but based on [defendant's] history of weapon usage," he needed defendant to "step out." (*Id.* at 05:41-05:47.) Defendant then stated that he "would rather . . . have [Officer Farias's] lieutenant there or something because" he did not "want to step out of the car when [he] didn't do anything." (*Id.* at 05:47-05:56.)

In response to defendant's request, Officer Farias requested that Sergeant Brown respond to the traffic stop. (*Id.* at 08:31-08:38.) Sergeant Brown arrived at the traffic stop approximately three minutes later. (*Id.* at 11:42.) Upon arriving at the scene, Sergeant Brown, approached defendant's vehicle and spoke with defendant for approximately five minutes concerning the traffic stop and Officer Farias' request that defendant step out of the vehicle during the traffic stop. (*Id.* at 11:42-16:35.) Sergeant Brown explained to defendant that although the police officers could lawfully order defendant out of his vehicle during the traffic stop, the officers did not automatically have the right to search his vehicle and confirmed that he (Sergeant Brown) had not given the officers permission to search defendant's vehicle. (*Id.* at 16:03-16:22.)

3

Defendant continued arguing with Sergeant Brown and refused to exit his vehicle, after which Sergeant Brown ordered defendant removed from his vehicle for obstruction of justice.[2] (*Id.* at 16:22-17:57.) Defendant again refused to exit his vehicle (*id.*) and, as officers tried to get him out of the vehicle, defendant attempted to roll up the window (*id.* at 17:55-18:12). Immediately after officers removed defendant from the vehicle, they observed a loaded .40 caliber semi-automatic pistol on the driver's seat, where defendant had been sitting. (*Id.* at 18:12-18:42; *see also* Def. Br. Ex. 1 at 3.)

## ARGUMENT

Defendant argues that the loaded .40 caliber semi-automatic pistol recovered from his seat should be suppressed, asserting that the officers lacked reasonable suspicion for the traffic stop, and the traffic stop was unreasonably prolonged. (Def. Br. at 4-10.)

The Court should deny defendant's motion without an evidentiary hearing because, even accepting as accurate defendant's description of the facts, defendant's claim is without legal support. Defendant's characterization of the traffic stop is both legally and factually incorrect. First, based on the facts and context known by the police officers, the officers had no less than three traffic violations upon which to reasonably suspect that defendant had violated the law. Even if the police officers who stopped defendant's vehicle incorrectly believed that defendant had violated

---

[2] As reflected in the arrest report, 720 ILCS 5/31-1(a) provides that "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity commits a Class A misdemeanor." (*See* Def. Br. Ex. 1 at 3.)

4

MCC § 9-76-090(c), as reflected in the arrest report and undisputed in defendant's motion, the officers had two additional reasons – failure to use a turn signal and an obstructed view – upon which they relied in initiating the lawful traffic stop. Second, the length of the traffic stop did not violate defendant's Fourth Amendment rights, as the officer's lawfully ordered defendant out of his vehicle and any additional time added to the stop was supported by reasonable suspicion. Consequently, the stop and seizure of defendant was lawful under the Fourth Amendment, and defendant has not presented sufficient facts to warrant a hearing on this matter.

I. **THE TRAFFIC STOP WAS SUPPORTED BY REASONABLE SUSPICION**

As held by the Seventh Circuit, a traffic stop is a form of an investigative stop. *See United States v. Shields*, 789 F.3d 733, 745 (7th Cir. 2015). To "support an investigatory stop, 'officers need only reasonable suspicion' – that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." *Id.* (quoting *Heien v. North Carolina*, 135 S.Ct. 530, 536 (2014)). "The standard takes into account the totality of the circumstances – the whole picture." *Navarette v. California*, 572 U.S. 393, 397 (2014). The Seventh Circuit has held that the suspicion that a defendant committed a traffic offense in violation of the Chicago Municipal Code is sufficient to create reasonable suspicion to support an investigatory stop. *See, e.g., id.* ("Because Mr. Shields does not dispute that he violated the Chicago Municipal Code by parking in the cross walk, the officers clearly had an objective basis to believe that he was violating the law."); *see also United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) ("Probable cause exists when the circumstances confronting a police

officer support the reasonable belief that a driver has committed even a minor traffic offense." (Internal quotations omitted)).

Here, defendant does not dispute that, as stated in the arrest report, police officers believed defendant had committed three traffic violations prior to initiating the traffic stop. Instead, defendant merely contends that, contrary to the officers' belief, defendant was not in fact parked at the time the officers passed his vehicle and, therefore, was not in violation of one of the three Chicago Municipal Codes that formed the bases for the police officers' stop. (Def. Br. at 6.) Despite acknowledging elsewhere in his motion that the officers stopped defendant's vehicle for more than just the vehicle light violation,[3] defendant does not contend that the other traffic violations failed to provide reasonable suspicion for the traffic stop. Because officers had numerous bases upon which to reasonably suspect that defendant had violated the law and defendant challenges only one of those bases, defendant's motion to suppress should be denied without an evidentiary hearing.

Even assuming that the vehicle light violation was the only basis for the officers' stop, defendant's motion should still fail. First, although defendant claims in his motion – without a supporting affidavit – that he was not parked at the time the officers passed his vehicle, he does not challenge the officers' belief that he was in fact parked. (Def. Br. at 6-7.) Second, even assuming that the police officers incorrectly believed defendant was parked, when an officer makes a stop based on a

---

[3] *See* Def. Br. at 3 ("The officers further claimed that they saw Mr. Thompkins merge from the side of the road back into traffic without using his turn signal, which the officers regarded as a violation of MCC 9-40-200(C)."); *see also id.* at 9 ("Mr. Thompkins' criminal history has nothing to do with alleged failure to use a turn signal.").

6

mistake of fact, the district court asks only whether the mistake was reasonable. *See United States v. Dowthard*, 500 F.3d 567, 569 (7th Cir. 2007). Here, where the officers observed defendant's vehicle in a parallel parking space at night with his vehicle's lights on, any mistake the officers made concerning whether the defendant was parked was reasonable. *See e.g., Navarette*, 572 U.S. at 397 ("[T]he level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." (Internal quotations omitted)).

For these reasons, the Court should deny defendant's motion to suppress based on his argument that the traffic stop was unsupported by reasonable suspicion.

## II. THE TRAFFIC STOP WAS NOT UNLAWFULLY PROLONGED

### A. Police Officer's Actions Consistent with Traffic Stop Mission

In *Rodriguez*, the Supreme Court explained that "[l]ike a Terry stop, the tolerable duration of police inquires in the traffic-stop context is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (holding that a seizure turns unlawful if it is prolonged to conduct a dog sniff without reasonable suspicion that there are illegal drugs in the stopped vehicle). As stated by the Supreme Court, "[b]eyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Id.* (quoting *Caballes*, 543 U.S. at 408). Pointing to its holding in *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) that police officers may always order a driver, already

lawfully stopped, to exit a vehicle, the Supreme Court explained that "the government's officer safety interest stems from the mission of the [traffic] stop itself." *Id.* at 1616 (internal quotations omitted). Because "[t]raffic stops are especially fraught with danger to police officers . . . an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Id.* (citing Tenth Circuit case "recognizing officer safety justification for criminal record and outstanding warrant checks"); *see also United States v. Rushin*, No. 16 CR 288, 2017 WL 4944820, at *3 (N.D. Il. Nov. 1, 2017) ("Courts have routinely found permissible steps taken in furtherance of officer safety that minimally prolong an otherwise lawful seizure.") As recognized by the Seventh Circuit, checking an individual's criminal history during a traffic stop is "a procedure permissible without reasonable suspicion." *United States v. Sanford*, 806 F.3d 954, 956 (7th Cir. 2015).

Here, police Officer Farias' actions during the traffic stop – as captured on his body worn camera – fully comported with the mission of the traffic stop, which included officer safety. After initiating the traffic stop, Officer Farias approached the driver side of defendant's vehicle and obtained defendant's driver's license. Officer Farias then returned to his patrol vehicle where he queried defendant's name in law enforcement databases, including running the defendant's criminal history – "a procedure permissible without reasonable suspicion." *Id.* Officer Farias' criminal history check revealed that defendant had prior convictions for firearm related offences. Equipped with this information, Officer Farias returned to defendant's vehicle and asked defendant about his criminal history. During this conversation,

8

the police officers observed a police baton inside the vehicle and within defendant's reach.

Officer Farias subsequently told defendant that he wanted to make sure defendant did not have any guns in his vehicle, which defendant interpreted as a request to search his vehicle. Consistent with the Supreme Court's ruling in *Mimms*, Officer Farias immediately told defendant that he understood defendant did not want him to the search the vehicle, but needed defendant to step out of the vehicle based on his history with weapons. All of this occurs within less than six minutes of defendant being pulled over. Defendant, thereafter, repeatedly declined to comply with Officer Farias' lawful request to step out of his vehicle and requested that a supervisor be called to the scene. Officers complied with this request and called Sergeant Brown, who arrived approximately three minutes later.

Consistent with the officer safety interests that the Supreme Court has recognized as part-and-parcel to the mission of a traffic stop, Officer Farias's check of defendant's criminal history, questioning of defendant about that criminal history, and ordering defendant out of his vehicle for the remainder of the traffic stop, did not unconstitutionally prolong the traffic stop. Instead, Officer Farias' actions consisted of "'ordinary inquiries incident to [the traffic] stop'" that are intended to ensure officer safety. *Rodriguez*, 135 S. Ct. at 1615 (quoting *Caballes*, 543 U.S. at 408). Indeed, Officer Farias' actions, including his request that defendant step out of his vehicle that occurred six minutes after defendant was pulled over and while Officer Farias was still in possession of defendant's driver's license, prolonged the lawful stop by

9

mere seconds. *See Rushin*, 2017 WL 4944820, at *3 (finding that the police officer's request that the defendant exit the vehicle, during which a dog sniff was conduct, did not extend the stop substantially beyond the time needed to explain the warning and have the defendant sign it). Defendant's refusal to comply with the officer's lawful request, conversely, was the cause of any subsequent delay.

### B. Information Lawfully Obtained During Traffic Stop Provided Officers with Reasonable Suspicion to Justify Prolonging the Stop

Even assuming that Officer Farias' actions more than minimally prolonged the traffic stop, information lawfully obtained during the traffic stop provided the officers with reasonable suspicion that justified continuing the traffic stop to permit further investigation. *See, e.g., United States v. Martin*, 422 F.3d 597, 601 (7th Cir. 2005) ("Information lawfully obtained during [the] period [necessary to complete the mission of the traffic stop] may provide the officer with reasonable suspicion of criminal conduct that will justify prolonging the stop to permit a reasonable investigation."). Here, Officer Farias ran defendant's criminal history, revealing defendant's numerous weapons-related convictions. After discovering defendant's weapons-centric history, the officers observed a police baton in the defendant's vehicle and within the reach of defendant.

This information, lawfully obtained during the traffic stop, provided Officer Farias with reasonable suspicion that defendant may have a firearm or other illegal weapons in the vehicle. As such, Officer Farias was justified in prolonging the traffic stop to permit additional investigation of that potential criminal conduct. *See*

*Sanford*, 806 F.3d at 959 ("The criminal histories that [the trooper] uncovered in his computer search made a compelling case to wait for the dog—the trooper had reasonable suspicion of criminal activity at that point and so was justified in prolonging the stop for a reasonable time to confirm or dispel, with the dog's assistance, his mounting suspicions."); *see also Johnson*, 331 F. App'x at 408-09 (holding that dog sniff performed after the defendant signed a written warning did not unconstitutionally prolong the traffic stop because information obtained during the traffic stop provided officers with reasonable suspicion to continue their investigation); *see also United States v. Martin*, 422 F.3d 597, 601 (7th Cir. 2005). To facilitate this additional investigation, Officer Farias lawfully ordered defendant out of his vehicle.

## CONCLUSION

For the forgoing reasons, the Court should deny defendant's motion to suppress. Because defendant's motion does not raise any material factual disputes, an evidentiary hearing is not required.

                Respectfully submitted,

                JOHN R. LAUSCH, JR.
                United States Attorney

By:   */s/ Shy Jackson*
      SHY JACKSON
      Assistant U.S. Attorney
      219 South Dearborn St., Rm. 500
      Chicago, Illinois 60604
      (312) 886-1317

Dated: January 28, 2019